IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

v.

PHILLIP DOWNING,
*Defendant*.

CRIMINAL NO. ELH-20-0103

**MEMORANDUM OPINION**

Phillip Downing, the pro se defendant, has filed correspondence construed as a Motion to Reduce Sentence pursuant to Amendment 821 of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"). ECF 82 ("§ 821 Motion"). He has also moved for compassionate release under 18 U.S.C. § 3582(c)(1)(A). ECF 88 ("Motion"). The Federal Public Defender has declined to supplement either motion. ECF 85 (§ 821 Motion); ECF 90 (Motion). The government has filed a consolidated opposition. ECF 92. Defendant did not reply.

No hearing is necessary to resolve the Motions. For the reasons that follow, I shall deny the motions.

I.      **Factual and Procedural Background**[1]

In an Indictment filed on March 11, 2020 (ECF 1), Downing was charged with one count of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count One) and one count of possession of ammunition by a prohibited person, in violation of 18 U.S.C. § 922(g)(1) (Count Two). On December 15, 2020, pursuant to a Plea Agreement (ECF 26), defendant entered a plea of guilty to Count One of the Indictment.

---

[1] I draw on and incorporate here the factual summary set forth in my Memorandum Opinion of April 7, 2022 (ECF 63), in which I denied defendant's prior compassionate release motion.

The Plea Agreement included a Stipulation of Facts ("Stipulation"). *Id.* at 10. According to the Stipulation, on December 9, 2019, defendant was observed engaging in conduct consistent with hand-to-hand drug dealing. As officers approached the defendant, he tried to flee. During defendant's flight, he discarded a bag that contained fifteen individual baggies. Defendant was apprehended and searched. A .38 caliber revolver, loaded with three .38 caliber cartridges, was recovered from defendant's jacket pocket. Cocaine and $294.00 in U.S. currency were also recovered from the defendant. The baggies were later tested and found to contain cocaine. The defendant agreed that he possessed the cocaine with the intent to distribute it. *Id.*

In the Plea Agreement, the parties agreed that defendant had a base offense level of 32 under the Guidelines because defendant qualified as a Career Offender under U.S.S.G. § 4B1.1(b)(1). *See* ECF 26, ¶ 6. Further, under U.S.S.G. § 3E1.1, the parties agreed to a three-level reduction for acceptance of responsibility. *Id.* at ¶ 6b. Thus, defendant had a final offense level of 29. And, pursuant to Fed. R. Crim. P. 11(c)(1)(C), the parties agreed to a sentence of 84 months of incarceration. *Id.* ¶ 9.

At the defense request, the Court proceeded immediately to sentencing. ECF 23.[2] A pre-plea criminal investigation had been conducted. ECF 18-2. It reflected that defendant had committed several prior offenses, including two felony drug offenses committed when defendant was a juvenile. *Id.* ¶¶ 2, 3.

In terms of the defendant's adult record, the investigation revealed that on January 28, 2009, when defendant was 18 years old, he was convicted of felony drug distribution and sentenced by the Circuit Court for Baltimore City to ten years of imprisonment, with nine years suspended.

---

[2] Despite the lack of a presentence report, the Court was provided with ample information to enable the Court to exercise its sentencing discretion. This included a pre-plea criminal investigation conducted by the U.S. Probation Office. *See* ECF 18-2.

*Id.* ¶ 5. However, defendant violated his probation on two occasions and received additional periods of incarceration. *Id.* Then, on August 4, 2009, when defendant was 19 years old, he was convicted of possession with intent to distribute CDS, for which he received a short sentence. *Id.* ¶ 6. In March 2011, when defendant was 20 years old, he was convicted of attempted distribution of heroin. *Id.* ¶ 7. He received a sentence of eight years, with all but 18 months suspended. *Id.*

In March 2014, defendant was convicted of possession with intent to distribute cocaine. *Id.* ¶ 8. He received a 12-year sentence, with all but one day suspended. And, in September 2019, defendant was convicted of another felony drug offense, for which he received a sentence of six years, with all but one day suspended. *Id.* ¶ 9. Notably, the underlying offense occurred while defendant was on probation for the offenses referenced in ¶¶ 8 and 9 of ECF 18-2.

According to the pre-plea investigation, the defendant had four offenses that qualified as predicates for the Career Offender designation. ECF 18-2 ¶ 13; *see id.* ¶¶ 5, 7, 8, 9. In addition, the pre-plea investigation noted in ¶ 14 that, if defendant had been convicted of Count Two of the Indictment, he would be deemed an Armed Career Criminal, based on the offenses in ¶¶ 5, 6, 7, 8, 9 of ECF 18-2. And, if so, he would have faced a mandatory minimum sentence of fifteen years of imprisonment. *See* 18 U.S.C. § 924(e).

Defendant qualified as a Career Offender. *See* ECF 18-2, ¶ 13. Therefore, he had an offense level of 32. After deductions for acceptance of responsibility, he had a final offense level of 29. And, because defendant was a Career Offender, he automatically had a Criminal History Category of VI under U.S.S.G. § 4B1.1(b). *Id.*

At the time, if defendant were not a Career Offender, he would have had a Criminal History Category of V. *See id.* ¶ 12. In particular, defendant had a total of eight criminal history points. ECF 18-2, ¶ 10. And, under U.S.S.G. § 4A1.1(d), two points were added because defendant

committed the offense at issue while under a criminal justice sentence in two cases. *Id.* ¶ 12; *see also id.* ¶¶ 8, 9 (predicates). A criminal history score of ten points equates to a criminal history category of V.

But, if defendant were sentenced today, only one status point would be added, under U.S.S.G. § 4A1.1(e). And, a criminal history score of nine points equates to a criminal history category of IV. On the other hand, if defendant is a Career Offender, the change in status points is of no moment. This is because, as noted, a Career Offender is deemed to have a criminal history category of VI.

With an offense level of 29 and a Criminal History Category of VI, the Guidelines called for a sentence ranging from 151 to 188 months of imprisonment. The C plea was well below the Guidelines.

At the time of sentencing on December 15, 2020 (ECF 23), defendant was 30 years old. ECF 18 at 4. The defense urged the Court to adopt the C plea. ECF 18 at 5-6. The Court considered defendant's challenging childhood. For example, defendant's mother was shot to death when the defendant was just eight years old. ECF 30 at 4. Although the defendant's grandfather "stepped in," *id.*, he died when the defendant was only thirteen years old. *Id.* at 5. The defendant left school in the tenth grade and turned to drugs. *See* ECF 18 at 5. The Court also considered the evaluation of defendant conducted on January 12, 2022, by Michael J. O'Connell, Ph.D., ABPP-F, a forensic psychologist. *See* ECF 47-1. And, the defendant submitted a letter to the Court, apologizing for his conduct. ECF 18-3.

In accordance with the parties' C plea, I sentenced defendant to 84 months of imprisonment for Count One, with credit from December 9, 2019. ECF 29 (Judgment). Defendant has been released to the Baltimore RRM. Federal Bureau of Prisons ("BOP") records indicate a projected

release date of July 8, 2025.; *see Inmate Locator*, BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited May 14, 2025). Including credit received by defendant for time served, he has served about 67 months of his 84-month sentence, or roughly 80%.

Defendant previously filed a pro se motion for compassionate release in September 2021. ECF 39. Then, through counsel, in January 2022 he filed another compassionate release motion. ECF 47. He also submitted several exhibits. By Memorandum Opinion and Order of April 7, 2022, I denied those motions. ECF 63, ECF 64.

In defendant's earlier motions, he argued that the "principal reason" to find extraordinary and compelling circumstances is that his girlfriend, Whittney Rudd—who is the mother and caregiver of defendant's minor son—had become "incapacitated." ECF 47 at 7. As of October 2021, the couple's son was six years old. *See Id.* at 4. Downing explained that Rudd was injured in a car accident in April 2021, which left her "unable to do anything for herself." *Id*. at 7. As a result, she was having difficulty caring for the couple's son. *Id*. Although other family members had been helping to take care of the child, they were unable to provide the level of care that the child required. *Id*.

As for medical conditions, asthma was the only condition that defendant cited as increasing the danger to him posed by COVID-19. *See* ECF 39 at 5; ECF 47 at 10. Defendant acknowledged that "[t]he severity of his conditions is unclear." ECF 47 at 10.

Downing also pointed to his rehabilitative record while incarcerated. In particular, he completed a drug education program; improved himself through his faith; expressed remorse; was viewed by other prisoners as a positive example; and did not have a disciplinary record. *Id.* at 10-12.

I was sympathetic to Downing's situation. And, there is no doubt that defendant's rehabilitative record, as well as his desire to help care for his son, were laudable. However, I concluded that defendant did not establish extraordinary and compelling circumstances under the compassionate release statute. Alternatively, even assuming, *arguendo*, that defendant had done so, other considerations, on balance, did not support compassionate release.

## II. Legal Standards

### A. Amendment 821

Section 3582(c)(2) of 18 U.S.C. permits a court to reduce the sentence of a defendant who was "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 924(o)", if the amendment has been made retroactively applicable, and the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*; *see United States v. Barrett*, 133 F.4th 280 (4th Cir. 2025); *United States v. Moore*, 2024 WL 2828103, at *1 (4th Cir. June 4, 2024) (per curiam); *United States v. Riley*, ELH-13-0608, 2022 WL 9361679, at *5 (D. Md. Oct. 14, 2022) (citing *Dillon v. United States*, 560 U.S. 817, 826 (2010)); *see also* U.S.S.G. § 1B1.10(a)(2)(B) (providing that a defendant is not eligible for a sentence reduction if the retroactively applicable amendment "does not have the effect of lowering the defendant's applicable guidelines range").

The Fourth Circuit has said that district courts must employ a two-step approach in considering 3582(c)(2) motions. *United States v. Peters*, 843 F.3d 572, 574 (4th Cir. 2016); *United States v. Williams*, 808 F.3d 253, 257 (4th Cir. 2015). "First, a court must determine the defendant's eligibility. Section 3582(c)(2) permits a reduction only if (1) the defendant's 'term of imprisonment [was] based on a sentencing range that has subsequently been lowered by the Sentencing Commission,' and (2) the reduction 'is consistent with applicable policy statements

6

issued by the Sentencing Commission.' § 3582(c)(2).  Second, the court may grant the authorized reduction 'after considering the factors set forth in section 3553(a) to the extent that they are applicable.'" *Peters*, 843 F.3d at 574 (citing § 3582(c)(2)).[3]  "The ultimate decision of '[w]hether to reduce a sentence and to what extent' is committed to the district court's discretion." *Id.*

Amendment 821 to the Guidelines went into effect on November 1, 2023. *Amendment 821*, U.S. SENT'G COMM'N, https://www.ussc.gov/guidelines/amendment/821.  It "is a multi-part amendment." *United States v. Gary*, JKB-08-086, 2024 WL 1641007, at *1 (D. Md. Apr. 16, 2024).

Part A of Amendment 821 pertains to criminal history and so called "status points." *Id.*  It amended U.S.S.G. § 4A1.1 "by redesignating subsection (d) as subsection (e) and reducing the additional criminal history points assessed to a defendant who committed his offense while under a criminal justice sentence." *Moore*, 2024 WL 2828103, at *1; *see also Barrett*, 133 F.4th at 282-83.  "Criminal justice sentence" under the Guidelines includes probation, parole, supervised release, imprisonment, work release or escape status.  U.S.S.G. § 4A1.1(e).

Prior to the amendment, under U.S.S.G. § 4A1.1(d), two points were added to a defendant's criminal history score if the defendant committed the underlying offense while under a criminal justice sentence.  But, as now codified in § 4A1.1(e), Amendment 821 limits the assignment of such "status points."

---

[3] One policy statement provides that courts may not reduce a sentence "to a term that is less than the minimum of the amended guideline range" unless the defendant's original sentence resulted from a downward departure based upon substantial assistance to government authorities. U.S.S.G. § 1B1.10(b)(2); *see United States v. Dunphy*, 551 F.3d 247, 252 (4th Cir. 2009) (concluding that § 1B1.10 is "a jurisdictional bar to reducing sentences below the range authorized by the Commission").

In particular, Amendment 821 permits the assignment of only one status point, and then only if a defendant has seven or more criminal history points. *See* U.S.S.G. § 4A1.1(e). In other words, the amendment eliminates any status points for a defendant who "has six or fewer criminal history points." *Id.*; *see also United States v. Law*, DKC-11-489, 2024 WL 3757902, at *1 (D. Md. Aug. 12, 2024) ("Part A . . . eliminated status points altogether for a defendant with six or fewer criminal history points.").

"The Sentencing Commission gave retroactive effect to the amended Guideline . . . beginning on February 1, 2024." *Moore*, 2024 WL 2828103, at *1; *see Barrett*, 133 F.4th at 283. So, under the new provision, U.S.S.G. § 4A1.1(e), only one "status point" is assessed, and only for those with seven or more criminal history points.

Part B provides for a decrease of two offense levels if ten conditions are met. *See* U.S.S.G. § 4C1.1(a). They are, *id.*:

> **(1)** the defendant did not receive any criminal history points from Chapter Four, Part A;
> **(2)** the defendant did not receive an adjustment under § 3A1.4 (Terrorism);
> **(3)** the defendant did not use violence or credible threats of violence in connection with the offense;
> **(4)** the offense did not result in death or serious bodily injury;
> **(5)** the instant offense of conviction is not a sex offense;
> **(6)** the defendant did not personally cause substantial financial hardship;
> **(7)** the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
> **(8)** the instant offense of conviction is not covered by § 2H1.1 (Offenses Involving Individual Rights);
> **(9)** the defendant did not receive an adjustment under § 3A1.1 (Hate Crime Motivation or Vulnerable Victim) or § 3A1.5 (Serious Human Rights Offense); and
> **(10)** the defendant did not receive an adjustment under § 3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. 848[.]

### B. Compassionate Release

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Moody*, 115 F.4th 304, 310 (4th Cir. 2024); *United States v. Davis*, 99 F.4th 647, 653 (4th Cir. 2024); *United States v. Brown*, 78 F.4th 122, 128 (4th Cir. 2023); *United States v. Malone*, 57 F.4th 167, 173 (4th Cir. 2023); *United States v. Bond*, 56 F. 4th 381, 383 (4th Cir. 2023); *United States v. Bethea*, 54 F.4th 826, 831 (4th Cir. 2022); *United States v. Ferguson*, 55 F.4th 262, 267 (4th Cir. 2022); *United States v. Hargrove*, 30 F.4th 189, 194 (4th Cir. 2022); *United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020), *abrogated on other grounds by United States v. Troy*, 64 F.4th 177 (4th Cir. 2023); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." *See* 18 U.S.C. § 3582(c)(1)(B); *see also Jackson*, 952 F.3d at 495.

A statutory exception is codified at 18 U.S.C. § 3582, which was first enacted as part of the Sentencing Reform Act of 1984. *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). It is commonly termed the "'compassionate release exception.'" *Moody*, 115 F.4th at 310; *see United States v. Osman*, 2024 WL 3633573, at *3 (4th Cir. Aug. 2, 2024) (stating that a motion under § 3582(c)(1)(A) is "commonly referred to as a motion for compassionate release . . . ."). Specifically, 18 U.S.C. § 3582(c)(1)(A)(i) authorizes a court to modify a defendant's sentence if "extraordinary and compelling reasons warrant such a reduction." *Hargrove*, 30 F.4th at 194.

As originally enacted, the compassionate release provision permitted a court to alter a sentence only upon motion made by the Director of the BOP. *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). This meant that a defendant seeking compassionate release had to rely on the BOP Director for relief. *See Bethea*, 54 F.4th at 831; *see, e.g., Orlansky v. FCI Miami Warden*,

9

754 F. App'x 862, 866–67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying compassionate release motion because § 3582 "vests absolute discretion" in the BOP). However, the safety valve of § 3582 languished, because the BOP rarely filed such a motion on an inmate's behalf. As a result, compassionate release was an infrequent occurrence. *See Hr'g on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were granted compassionate release per year between 1984 and 2013).

In 2018, with the passage of the First Step Act ("FSA"), *see* Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018) (codified as 18 U.S.C. § 3582(c)(1)(A)), Congress "broadened" the authority of courts to grant sentencing modifications pursuant to 18 U.S.C. § 3582. *Malone*, 57 F.4th at 173. In particular, the FSA authorized a court to grant compassionate release "upon motion of the Director of [BOP], *or upon motion of the defendant after the defendant has fully exhausted all administrative rights* to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first. 18 U.S.C. § 3582(c)(1)(A) (emphasis added); *see also Ferguson*, 55 F.4th at 268; *United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021); *McCoy*, 981 F.3d at 276. In other words, a federal inmate is now able to file a motion for compassionate release directly with the court, as long as the inmate first exhausts administrative remedies. *See United States v. McCoy*, 981 F.3d 271, 275–76 (4th Cir. 2020).

However, under 18 U.S.C. § 3582(c)(1)(A), the court may modify the defendant's sentence only if two criteria are satisfied. *Brown*, 78 F.4th at 128; *Bethea*, 54 F.4th at 831. Specifically,

10

"the district court must conduct a two-step analysis." *United States v. Centeno-Morales*, 90 F.4th 274, 279 (4th Cir. 2024); *see also Bond*, 56 F.4th at 383.

The first step actually consists of two parts. The court "must determine: 1) whether extraordinary and compelling reasons warrant . . . a [sentence] reduction; and 2) that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *United States v. Malone*, 57 F.4th 167, 173 (4th Cir. 2023); *see Moody*, 115 F.4th at 310; *Davis*, 99 F.4th at 653; *Bond*, 56 F.4th at 383; *Bethea*, 54 F.4th at 831; *United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021) (per curiam), *cert. denied*, 142 S. Ct. 383 (2021).

If that first step is met, the court then proceeds to the second step. Under the second step, the court must determine whether release is appropriate in light of the sentencing factors in 18 U.S.C. § 3553(a), "to the extent those factors are applicable." *Bethea*, 54 F.4th at 831; *see Moody*, 115 F.4th at 310; *Malone*, 57 F.4th at 174; *Hargrove*, 30 F.4th at 194; *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021), *superseded by regulation as stated in Davis*, 99 F.4th 647; *Kibble*, 992 F.3d at 330. "Importantly, a court assessing a compassionate release motion is entitled to consider the § 3553(a) factors '[o]nly after' conducting the first step's analysis." *Osman*, 2024 WL 3633573, at *4 (citations omitted) (alteration in *Osman*); *see Malone*, 57 F.4th at 173 (stating that the district court may consider the § 3553(a) sentencing factors only after determining that extraordinary and compelling reasons warrant a sentence reduction and that a reduction is consistent with the Sentencing Commission's policy statements).

Generally, "the district court enjoys broad discretion in conducting a § 3582(c)(1)(A) analysis." *United States v. Jenkins*, 22 F.4th 162, 169 (4th Cir. 2021), *superseded by regulation as stated in Davis*, 99 F.4th 647. Notably, "it weighs against an abuse of discretion—and is viewed as 'significant'—when the same judge who sentenced the defendant rules on the compassionate

release motion." *Bethea*, 54 F.4th at 834; *see United States v. Gutierrez*, 2023 WL 245001, at *5 (4th Cir. Jan. 18, 2023); *Hargrove*, 30 F.4th at 200; *High*, 997 F.3d at 189.

As the Fourth Circuit has recognized, "when deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Taylor*, 820 F. App'x 229, 230 (4th Cir. 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)); *see Davis*, 99 F.4th at 653–54. The Policy Statement codified at U.S.S.G. § 1B1.13 is titled "Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)" ("Policy Statement"). "[U]ntil recently," that Policy Statement did not apply to motions filed by prisoners. *Davis*, 99 F.4th at 654; *see McCoy*, 781 F.3d at 281. The Policy Statement began: "Upon motion *of the Director of the Bureau of Prisons* under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . ." U.S.S.G. § 1B1.13 (2021) (emphasis added). Interpreting this language, the Fourth Circuit said in *McCoy*, 981 F.3d at 281, that, "[b]y its plain terms . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)." Therefore, on the basis of that earlier text, the Court held: "When a defendant exercises his . . . right to move for compassionate release on his own behalf, . . . § 1B1.13 does not apply, and thus § 3582(c)(1)(A)'s consistency requirement does not constrain the discretion of district courts." *Id.* (citation omitted). As a result, district courts were "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'" *Id.* at 284 (citation omitted).

Effective November 1, 2023, U.S.S.G. § 1B1.13 was amended. *See Davis*, 99 F.4th at 654 (citing 88 Fed. Reg. 28254 (May 3, 2023)). The Policy Statement now begins: "Upon motion of the Director of the Bureau of Prisons *or the defendant* pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . ." U.S.S.G. § 1B1.13 (2023) (emphasis added).

12

Therefore, the Policy Statement is applicable to defendant-filed motions under § 3582(c)(1)(A). *Davis*, 99 F.4th at 658 (directing district court on remand "to revisit [the petitioner's] arguments in light of the Sentencing Commission's new policy statement outlining when and how to consider changes in law as an extraordinary and compelling reason for a reduction"). As a result, when a defendant files a motion for compassionate release, a court must ensure that any sentence reduction "is consistent with" the Policy Statement's provisions. 18 U.S.C. § 3582(c)(1)(A).

The Policy Statement provides, in part, U.S.S.G. § 1B1.13(a):

(B) IN GENERAL.—Upon motion of the Director of the Bureau of Prisons or the defendant pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

(1) (A) extraordinary and compelling reasons warrant the reduction; or
(B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

(2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) the reduction is consistent with this policy statement.

Section 1B1.13(b) of the Policy Statement is titled "EXTRAORDINARY AND COMPELLING REASONS." It identifies multiple circumstances that, individually or in combination, may provide "extraordinary and compelling reasons" for a reduction in sentence. *See* § 1B1.13(b)(1)–(6). These include certain medical circumstances of the defendant, such as a terminal illness, "serious cognitive impairment," a medical condition that requires "specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death"; or the defendant is at imminent risk of being affected by "an ongoing outbreak of infectious disease" or "an ongoing public health emergency . . . .", § 1B1.13(b)(1)(A), (B), (C), (D); the defendant's

13

age, along with other factors, § 1B1.13(b)(2); the defendant's family circumstances, § 1B1.13(b)(3)(A), (B), (C), (D); the fact that the defendant, while in custody, was the victim of sexual or physical abuse committed by, or at the direction of, a correctional officer, § 1B1.13(b)(4)(A), (B); for a defendant who received an "unusually long sentence" and has served at least 10 years of the sentence, a non-retroactive change in the law that "produce[s] a gross disparity" in relation to "the sentence likely to be imposed at the time the motion is filed . . . .", § 1B1.13(b)(6); and "any other circumstance or combination of circumstances . . . similar in gravity to" the circumstances "described in paragraphs (1) through (4)." § 1B1.13(b)(5).

Section 1B1.13(c) of the Policy Statement is titled "LIMITATION ON CHANGES IN LAW." It specifies that, "[e]xcept as provided in subsection (b)(6)," which concerns an "unusually long sentence," "a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement." U.S.S.G. § 1B1.13(c). "However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under [the Policy Statement], a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction." *Id.*; *see Davis*, 99 F.4th at 654.[4]

---

[4] In *Concepcion v. United States*, 597 U.S. 481 (2022), the Supreme Court concluded that a district court's general obligation "to consider [all] nonfrivolous arguments presented by the parties," *id.* at 487, required it "to consider intervening changes of law or fact in exercising [its] discretion to reduce a sentence pursuant to the First Step Act." *Id.* at 500. However, the Court acknowledged that "Congress or the Constitution [may] limit[] the scope of information that a district court may consider in deciding whether, and to what extent, to modify a sentence . . . ." *Id.* at 486. "Thus," the Court noted, "Congress expressly cabined district courts' discretion [to reduce a sentence] by requiring courts to abide by the Sentencing Commission's policy statements." *Id.* at 495. It follows that, because the Policy Statement is now applicable to

Section 1B1.13(d) of the Policy Statement concerns rehabilitation of the defendant. It limits the weight a court may assign to a defendant's rehabilitation while serving a sentence. That section provides that, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13(d). "However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." *Id.* And, § 1B1.13(e) provides that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant" a sentence reduction.

Even if a defendant prisoner establishes that extraordinary and compelling reasons warrant relief, a reduced sentence does not necessarily follow. The court must then consider the sentencing factors under 18 U.S.C. § 3553(a) to determine whether, in its discretion, a reduction of sentence is appropriate. *See Dillon*, 560 U.S. at 826–27; *Brown*, 78 F.4th at 128; *Mangarella*, 57 F.4th at 200, 203; *Malone*, 57 F.4th at 174; *Bethea*, 54 F.4th at 833; *Hargrove*, 30 F.4th at 195; *High*, 997 F.3d at 186; *Martin*, 916 F.3d at 397; *see Kibble*, 992 F.3d at 329–30 (noting that district court must consider § 3553(a) factors when considering a motion to reduce sentence under § 3582(c)(1)(A) and district court enjoys broad discretion in conducting this analysis); *United States v. Trotman*, 829 F. App'x 607, 608 (4th Cir. 2020) (per curiam) (recognizing that, when considering a motion to reduce sentence under § 3582(c)(1)(A), the court must consider the sentencing factors under § 3553(a), to the extent applicable); *United States v. Chambliss*, 948 F.3d at 693–94 (district court must give due consideration to the § 3553(a) factors); *see also United*

---

prisoner-filed motions for compassionate release, a court may consider intervening changes of law only in the manner that the Policy Statement prescribes.

*States v. Jones*, 2022 WL 2303960, at *1 (4th Cir. June 27, 2022) (per curiam) (noting that "a court need not explicitly make findings on extraordinary and compelling reasons where consideration of the § 3553(a) factors counsels against release"); *United States v. Butts*, 2021 WL 3929349, at *2 (4th Cir. Sept. 2, 2021) (per curiam) (noting that, even if the district court finds extraordinary and compelling circumstances, it must consider the § 3553(a) factors to the extent applicable in exercising its discretion). Notably, the amendments to the Guidelines in November 2023 did not alter this requirement.

The § 3553(a) "factors include 'the nature and circumstances of the offense'; 'the history and characteristics of the defendant'; and the need for the sentence to 'provide just punishment,' 'afford adequate deterrence,' 'protect the public from further crimes of the defendant,' and 'provide the defendant with . . . training, medical care, or other correctional treatment.'" *Jenkins*, 22 F.4th at 170 (quoting 18 U.S.C. § 3553(a)). As the Fourth Circuit has observed, "'many case-specific facts fit under the broad umbrella of the Section 3553(a) factors.'" *Bond*, 56 F.4th at 384 (quoting *Jackson*, 952 at 500). The district courts "enjoy the discretion to give additional weight to any one factor so long as they do not confine their analysis to that factor." *Davis*, 99 F.4th at 656; *see United States v. Friend*, 2 F.4th 369, 381–82 (4th Cir. 2021). And, in weighing the § 3553(a) factors, the court may consider the terms of a plea bargain. *Bond*, 56 F.4th at 384–85.

In *Davis*, 99 F.4th at 659, the Fourth Circuit said: "District courts are not required to acknowledge and address each of the defendant's arguments on the record when conducting a § 3553(a) analysis." But, "'the record as a whole'" must demonstrate that the judge considered the parties' contentions and had "'a reasoned basis'" for the exercise of judicial discretion. *Malone*, 57 F.4th at 176 (citations omitted); *see also Davis*, 99 F.4th at 659; *United States v. Puzey*, 2023 WL 2985127, at *2 (4th Cir. Apr. 18, 2023) (per curiam).

In particular, "the court must provide an explanation sufficient 'to allow for meaningful appellate review' in light of the particular circumstances of the case." *United States v. Cohen*, 2022 WL 2314300, at *1 (4th Cir. June 28, 2022) (per curiam) (quoting *High*, 997 F.3d at 190). And, a district court abuses its discretion when it "act[s] arbitrarily or irrationally," "fail[s] to consider judicially recognized factors constraining its exercise of discretion," "relie[s] on erroneous factual or legal premises," or "commit[s] an error of law." *High*, 997 F.3d at 187 (internal quotation marks omitted); *see Jenkins*, 22 F.4th at 167; *see also Brown*, 78 F.4th at 132 (criticizing district judge's "cursory" consideration of the § 3553(a) factors); *United States v. Dillard*, 891 F.3d 151, 158 (4th Cir. 2018).

"How much explanation is 'enough' depends on the complexity of a given case." *Gutierrez*, 2023 WL 245001, at *3; *see United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021). For example, "when a defendant 'present[s] a significant amount of post-sentencing mitigation evidence, . . . a more robust and detailed explanation [is] required.'" *United States v. Cohen*, 2022 WL 2314300, at *1 (4th Cir. June 28, 2022) (per curiam) (quoting *High*, 997 F.3d at 190) (alterations in *Cohen*).

In any event, "the court must provide an explanation sufficient 'to allow for meaningful appellate review' in light of the particular circumstances of the case." *Cohen*, 2022 WL 2314300, at *1 (quoting *High*, 997 F.3d at 190). And, a more detailed explanation may be required if a substantial change in the law creates a disparity between the sentence a defendant actually received and the sentence he would receive, if sentenced under current law. *See Davis*, 99 F.4th at 661; *see* 18 U.S.C. § 3553(a)(6) (directing a court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."); *see Moody*, 115 F.4th at 310 (recognizing that a defendant may not "challenge the

17

validity of a sentence in a compassionate release" motion but explaining that a court may consider whether a defendant's sentence would be shorter "because of changes in law."). In explaining its compassionate release ruling, "a district court is permitted to add to its original, sentencing-phase consideration of the § 3553(a) factors . . . ." *Bethea*, 54 F.4th at 834; *see Kibble*, 992 F.3d at 332.

*Davis*, 99 F.4th 647, is informative. The Court recognized that a change in the Guidelines or the law can produce a sentencing disparity under § 3553(a)(6). *Id.* at 654–55. And, the Court observed that changes in the law since the defendant's sentencing "would [have] lower[ed] [the defendant's] guidelines range from a 188–235 months range to [a] 92–115 months range." *Id.* at 661.

According to the *Davis* Court, if the defendant were sentenced under current Guidelines, "it is very likely that [the defendant] would already be out of prison." *Id.* The Court stated, *id.*: "That reality alone implicates one of the applicable sentencing factors: 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'" *Id.* (quoting 18 U.S.C. § 3553(a)(6)). It concluded that the district court was obligated to provide a "detailed explanation" of its § 3553(a) analysis, because "[t]his sentence disparity is so stark, and the change in law so substantial." *Davis*, 99 F.4th at 661 (citing *Chavez-Meza v. United States*, 585 U.S. 109, 119 (2018)).

### III. Discussion

### A. Amendment 821

The government argues that Downing's Guidelines range is not subject to any sentencing guidelines that have been retroactively changed. ECF 92 at 4 (citing *United States v. Vasquez*, 2024 U.S. Dist. LEXIS 136676 (W.D.N.C. July 31, 2024) (denying 3582(c)(2) motion because the defendant had never been assessed any "status points"); *United States v. Bailey*, CR 2:95-00002,

2024 WL 3569217 (S.D.W. Va. July 29, 2024) (same); *cf. United States v. Harris-Howell*, JKB-19-cr-0036, 2024 WL 1621173 (D. Md. Apr. 15, 2024) (denying motion to appoint counsel to file § 3582(c) motion because the defendant "did not receive any 'status points'" and hence was ineligible for relief).

Here, Downing was on supervised probation at the time of the underlying offense. ECF 63 at 3. Applying Amendment 821, Downing could have received a one-point enhancement, instead of two points. However, his criminal history category would have been VI, regardless of his criminal history points. This is because he qualified as a Career Offender. Therefore, Amendment 821 did not change the sentencing Guidelines for Downing, and does not benefit him.

In sum, Downing is not eligible for any relief because he was not sentenced under a Guidelines range that has now been lowered under Amendment 821.

### B. Compassionate Release

Downing refers to Amendment 821 in his Motion for Compassionate Release (ECF 84). But, he cites 18 U.S.C. § 3582(c)(1)(A), which permits the court to modify a term of imprisonment if a defendant has fully exhausted his administrative remedies with the Bureau of Prisons and the court finds that extraordinary and compelling reasons warrant a reduction.

Defendant fails to allege that he has fully exhausted all administrative remedies within the Bureau of Prisons for his most recent compassionate release request. Nevertheless, I shall assume, *arguendo*, that defendant has exhausted, given the time that the matter has been pending. Even so, he does not cite any extraordinary and compelling reasons for release, other than a desire to be home with his children. This is an insufficient basis under the statute.

### C. 18 U.S.C. § 3355(a)

Even assuming defendant has established an extraordinary and compelling reason for compassionate release, that finding would not end the inquiry. The Court must next consider the sentencing factors in 18 U.S.C. § 3355(a). These include: (1) the nature of the offense and the defendant's characteristics; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (3) the kinds of sentences available and the applicable Guidelines range; (4) any pertinent Commission policy statements; (5) the need to avoid unwarranted sentence disparities; and (6) the need to provide restitution to victims.

Defendant's crime was extremely serious. Downing stood before the Court as a career offender with a long history of prior convictions and having committed the instant offense while on court supervision. The instant offense involved the distribution of cocaine and the possession of a loaded firearm. In general, the criminal justice system had been lenient with defendant. Clearly, other sentences imposed for prior convictions did not deter Downing from committing additional crimes, and his new crimes involved the dangerous combination of drugs and guns. The recommended sentence was a generous one. The Court carefully considered all aspects of Downing's life before agreeing to impose a sentence of 84 months, consistent with the C plea.

### IV. Conclusion

For the foregoing reasons, I shall deny defendant's § 821 Motion (ECF 82) and Compassionate Release Motion (ECF 88). An Order follows.

Date:  May 23, 2025                             /s/
                                                Ellen Lipton Hollander
                                                United States District Judge